**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

LEO T. GALLION,

Plaintiff,

v.

NICHOLAS J. ROMEO and MARK S. DILLMAN,

Defendants.

Case No. 20-CV-120-JPS

**ORDER**

## 1. BACKGROUND

Plaintiff Leo T. Gallion ("Gallion"), representing himself, filed this civil rights action on January 27, 2020 while incarcerated. ECF No. 1. The Court screened Gallion's complaint under 28 U.S.C. § 1915A on February 14, 2020, determining that his complaint "fail[ed] to state any plausible claims for relief." ECF No. 7 at 3. The Court allowed Gallion to file an amended complaint in accordance with its screening order by February 28, 2020. *Id.* at 4. After several extensions of time, ECF Nos. 9, 11, and April 14, 2020 text order, Gallion filed his amended complaint on June 16, 2020. ECF No. 13. The Court screened Gallion's amended complaint, determining that he may proceed on a claim for the use of excessive force in violation of the Fourth Amendment against Defendants Nicholas J. Romeo ("Romeo") and Mark S. Dillman ("Dillman") (together, "Defendants"). ECF No. 14 at 4.

With its screening order on Gallion's amended complaint, the Court mailed Gallion copies of the "Answers to Pro Se Litigants' Common Questions" guide and the "Answers to Prisoner Litigants' Common Questions" guide (together, the "Guides"). ECF No. 14-1. The Guides twice

informed Gallion that if he neglected to update his mailing address with the Court, he "may not receive important information about [his] case," which "could result in [him] losing important rights or losing [his] entire case." ECF No. 14-1 at 3–4, 25.

The U.S. Marshals Service served Gallion's amended complaint on Romeo and Dillman, who filed an answer to the amended complaint. ECF No. 19. Thereafter, the Court entered a scheduling order that, in part, set an August 1, 2022 deadline for summary judgment motions. ECF No. 23. With the scheduling order, the Court mailed Gallion a copy of this District's Civil Local Rules regarding motion practice, including summary judgment motion practice. ECF No. 23-1. The scheduling order itself, like the Guides, instructed that

> The plaintiff is hereby warned that failure to make a timely submission or otherwise comply with the Court's orders may result in the dismissal of this action for failure to prosecute. The Court further reminds the plaintiff that it is his responsibility to promptly notify the Court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the Court advised of his whereabouts may result in the dismissal of this case without further notice.

ECF No. 23 at 7–8.

Now before the Court are Defendants' motion for summary judgment, ECF No. 29, and Defendants' Civil Local Rule 7(h) motion for leave to file their statement of facts in support of their motion for summary judgment, ECF No. 27. For the reasons explained in the balance of this Order, the Court will grant both motions and will dismiss this action with prejudice.

## 2. GALLION'S FAILURE TO RESPOND AND PROSECUTE

Gallion did not file an opposition to either Defendants' motion for summary judgment or Defendants' motion for leave to file their statement of facts, nor has he requested an extension of time to do so. Both motions were filed with an accompanying certificate of service confirming that they were served on Gallion by United States mail. ECF No. 33. The certificate of service states that service was made on Gallion at the Milwaukee Secure Detention Facility ("MSDF"), which is his last known address on the Court's docket. *Id*. However, the State of Wisconsin Offender Locator indicates that Gallion was released from MSDF on a DDC Hold to an "Unknown" location on April 13, 2022.[1] *Id.* Gallion has not provided any address updates to the Court, despite having been informed of the potential consequences of neglecting to do so. ECF No. 14-1 at 3–4, 25.

Separately, the Court's scheduling order instructed the parties that "[f]or summary judgment motions, the parties must meet and confer at least 30 days prior to filing the motion" in order to create "a single, agreed-upon statement of facts" to submit with the motion. ECF No. 23 at 3. In line with this District's Local Rules, the scheduling order permitted the parties to submit a separate set of itemized, disputed facts, in addition to their statement of stipulated facts. *Id.*; *see also* Civ. L.R. 56(b)(1)(C). Also in line with the Local Rules, the Court's scheduling order informed the parties that, "[i]f a party disagrees whether a statement is material or disputed, it must take care to explain to the Court why its position is correct." ECF No. 23 at 3; *see also* Civ. L.R. 56(c)(2)(B). Finally, the Court's scheduling order

[1]State of Wisconsin Offender Locator, *available at* https://appsdoc.wi.gov/ (last visited Nov. 14, 2022).

explained that "either party's failure to respond to a motion for summary judgment, or otherwise comply with Civil Local Rules 7 and 56, may constitute grounds for the Court to grant the opposing party's motion for summary judgment." ECF No. 23 at 4.

Defendants filed their Civil Local Rule 7(h) motion for leave to file their statement of facts in support of summary judgment because their counsel was "unable to meet and confer with [Gallion] for purposes of creating a single agreed upon statement of facts." ECF No. 27. Specifically, they explained that "[d]espite having initial contact with [Gallion], counsel of record for the Defendants has not been successful in conferring with [Gallion] to create stipulated facts." *Id.* In his affidavit in support of the motion for leave, Defendants' counsel explains that he made several attempts beginning in June 2022 to contact Gallion to discuss the meet-and-confer requirement for a set of stipulated facts. ECF No. 28 at 1. These attempts included efforts to contact Gallion directly as well as to contact Gallion's probation officer "to receive [Gallion's] last known contact information." *Id.* Defendants' counsel finally made contact with Gallion in late June 2022 after leaving him a message, and told Gallion that he sought to confer to "discuss facts for purposes [of] a [d]ispositive motion." *Id.* at 2. Thereafter, Defendants' counsel "made multiple attempts via phone to [Gallion] to discuss stipulated facts" and left messages. *Id.* at 3. Defendants' counsel again contacted Gallion's probation officer and asked him to ask Gallion to return his calls; Gallion did not do so. *Id.*

As mentioned, Gallion has not responded to the 7(h) motion, nor has he responded to Defendants' motion for summary judgment. The Court has afforded Gallion ample opportunity to oppose both motions, and well over the seven days permitted by the Local Rules for an opposition to a 7(h)

motion and the 30 days permitted by the Local Rules for an opposition to a summary judgment motion, even with the extra three days afforded to Gallion where service is made by mail. Civ. L.R. 7(b), (h); Fed. R. Civ. P. 6(d). Civil Local Rules 7(b) and (d) warn that "[f]ailure to respond to [a] motion may result in the Court deciding the motion without further input from the parties," and that "[f]ailure to comply with [motion] briefing requirements . . . may result in sanctions up to and including the Court denying or granting the motion." Indeed, the Court has not received any filings or contact from Gallion since he filed his amended complaint on June 16, 2020. ECF No. 13.

Thus, Gallion has both (1) neglected to respond to Defendants' summary judgment motion and (2) failed to prosecute his case (which includes his failure to update his address). *See Bell v. Kozak*, No. 18-CV-1150-PP, 2019 WL 4261069, at *1 (E.D. Wis. Sept. 9, 2019) (dismissing case for failure to respond to dispositive motion *and* failure to diligently prosecute) (citing Civ. L.R. 7(d)). However, for the sake of completeness and in line with Seventh Circuit guidance, the Court will consider Defendants' motion for summary judgment to determine whether it states adequate grounds for the relief requested. *Bonvolanta v. Delnor Cmty. Hosp.*, 413 F. Supp. 2d 906, 908 (N.D. Ill. 2005) (citing *Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996) ("[T]he Seventh Circuit . . . requires that before granting a dispositive motion as unopposed, the trial judge must look at the motion to determine whether it states adequate grounds for the relief requested.")).

Because Gallion did not respond to Defendants' 7(h) motion and did not meet and confer with Defendants in violation of the Court's order, for purposes of Defendants' motion for summary judgment, the Court will grant the motion and adopt Defendants' statement of facts with minor, non-

substantive edits. ECF No. 32; *see also McCurry v. Kenco Logs. Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (courts may "strictly enforce local summary-judgment rules" even against pro se litigants); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1020 (N.D. Ill. 2018) (disregarding portions of plaintiff's proffered facts on summary judgment for failure to comply with local rule). However, because Gallion's amended complaint was verified, the Court also includes material facts from Gallion's amended complaint in the following factual summary, in order to assess whether any genuine dispute of material fact exists. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) ("A verified complaint is the equivalent of an affidavit for summary judgment purposes."). The Court further includes material facts from Dillman's body-worn camera footage, submitted as an exhibit in support of Defendants' motion, in its factual summary. *Scott v. Harris*, 550 U.S. 372, 381 (2007) (while courts must view the facts in the light most favorable to the nonmoving party on summary judgment, they must also "view[] the facts in the light depicted by the video tape.").

Because the Court determines that there is no genuine dispute of material fact and, accordingly, that Defendants' motion for summary judgment states adequate grounds for the relief requested, the Court will grant the motion. Consequently, the Court will dismiss the action with prejudice.

## 3. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the

applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs 'that [the court] leave[s] those tasks to factfinders.'" *H–D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1010 (E.D. Wis. 2018) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)). "[T]he non-movant need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

**4. RELEVANT FACTS**

On April 9, 2019, Milwaukee Police Officers Dillman and Romeo were on duty and assigned to a fully-marked City of Milwaukee Police Department squad vehicle equipped with red and blue emergency LED lights, audible siren, and squad camera. ECF No. 32 at 1. While on duty, Dillman and Romeo were dressed in official City of Milwaukee Police Department uniforms, and on their outermost garments, they each displayed official badges and nameplates. *Id.*

At approximately 12:45 a.m. on April 9, 2019, Dillman and Romeo were in the 2600 block of North 24th Street, when a shotspotter alert came over for one round fired outside of the address of 2652 North 24th Street. *Id.* As Dillman and Romeo were traveling southbound in the 2600 block of North 24th and North 23rd Street, they observed a 2009 black Kia that was

traveling westbound in the alley with excessively tinted windows and the officers suspected the vehicle lacked a registration light. *Id.* The black Kia exited the "T" alley and traveled southbound on North 24th Street, then westbound on West Clarke Street. *Id.* Dillman activated his emergency lights and siren at 2450 West Clarke Street to conduct a traffic stop. *Id.*

The operator of the vehicle, who was later identified as Gallion, did not immediately stop. *Id.* Gallion disregarded stop signs on North 25th Street at West Hadley, West Locust Street, West Chambers Street, and West Burleigh Street. *Id.* The pursuit ended when Gallion lost control and struck a utility pole at 3312 North 24th Street. *Id.* at 1–2. Romeo and Dillman each exited their squad vehicle after Gallion's vehicle came to rest. *Id.* at 2.

Romeo and Dillman approached the vehicle with their Department-issued firearms. *Id.* Romeo observed Gallion in the driver's seat and also observed a semiautomatic handgun with an extended magazine next to Gallion's right leg. *Id.* Romeo saw Gallion look down towards the center interior of the vehicle. *Id.* Dillman's body-worn camera footage shows Gallion looking towards the center interior of the vehicle, ECF No. 31, Ex. A at 2:18, and captures Romeo stating immediately afterwards that Gallion "has got a gun by him," *id.* at 2:20. Romeo was concerned that Gallion was reaching towards the firearm in the vehicle. ECF No. 32 at 1. Romeo and Dillman told Gallion three times to "get out of the car." ECF No. 31, Ex. A at 2:18–30. When Gallion did not comply, Romeo unbuckled Gallion's seatbelt and pulled him out of the vehicle away from the firearm. ECF No. 32 at 1. Romeo could feel Gallion's upper body tense and believed that to constitute a "resistive nature." *Id.*; ECF No. 31 at 3.

After removing Gallion from the car, Defendants instructed Gallion at least seven times to "get on the ground." ECF No. 31, Ex. A at 2:30–46.

Due to Gallion's resistance, and because he only had control of Gallion's left hand, Romeo delivered two strong side knee strikes to create dysfunction and to prevent Gallion from obtaining the firearm, as Romeo and Dillman brought Gallion to the ground. ECF No. 32 at 2; ECF No. 31, Ex. A at 2:30–46. Romeo avers that, because Gallion was moving at the time, the strikes landed on his shoulder and head area, rather than his torso, which was the intended location. ECF No. 31 at 3. The body-worn camera footage reflects that Gallion was still moving at the time of the knee strikes. ECF No. 31, Ex. A at 2:30–46. Once on the ground, Gallion did not initially comply with Dillman's and Romeo's commands to put his hands behind his back. *Id.* at 2:53. Other officers arrived on the scene thereafter, Gallion was taken into custody, and officers searched the vehicle. *Id.* at 3:00–7:57.

Gallion was transported to the hospital for x-rays of his head. ECF No. 13 at 4. Gallion sustained scars on his face and a knot on the back of his head and alleged that Romeo was aiming for Gallion's head, versus his torso area. *Id.* A search of the vehicle later revealed a loaded black Taurus Millennial semiautomatic handgun. ECF No. 31 at 3. Contrary to Dillman's and Romeo's belief about a lack of a registration light, Gallion's vehicle was properly registered. ECF No. 13 at 3.

**5. ANALYSIS**

Defendants argue that the Court should grant summary judgment in their favor because their actions (1) were objectively reasonable and (2) are protected by qualified immunity. ECF No. 30 at 1–2. Because the Court determines that Defendants' actions are protected by qualified immunity, the Court need not address the issue of whether Defendants' actions were affirmatively objectively reasonable as a matter of law; it only need address,

as discussed below, whether Gallion has met his burden of establishing the actions were objectively *unreasonable*.[2]

The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine the applicability of qualified immunity at the summary-judgment stage, a court must engage in a two-part analysis to determine whether (1) the facts, viewed in the light most favorable to the non-movant, establish the violation of a constitutional right, and (2) the constitutional right at issue was "clearly established" at the time of the official's purportedly illegitimate conduct. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

A right is clearly established when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations and alterations omitted). Courts should "not require a case directly on point, but existing precedent must have placed the statutory or

[2]The Court notes parenthetically that Gallion's claims may well be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). As a result of the incident subject to this lawsuit, Gallion was charged with "Vehicle Operator Flee/Elude Officer," "2nd-Degree Recklessly Endangering Safety," and "Possess Firearm-Convicted of a Felony." *State v. Gallion*, 2019CF001539 (Milwaukee Cnty. Circ. Ct. Apr. 10, 2019), *available at* https://wcca.wicourts.gov/ (last visited Nov. 14, 2022). Gallion ultimately pled guilty to the latter two charges, and the first was dismissed but read in at sentencing. *Id.* A plaintiff raising an excessive force claim "can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the [state] conviction." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014). The Court need not reach the *Heck* issue, however, because it dismisses Gallion's suit on other grounds.

constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court emphasized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft*, 563 U.S. at 742). The "clearly established law" must instead "be particularized to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Notably, "[a]s applied to a Fourth Amendment excessive-force claim, the qualified-immunity doctrine gives 'enhanced deference to officers' on-scene judgments about the level of necessary force.'" *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (quoting *Abbott v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013)). Thus,

> even if the plaintiffs demonstrate that excessive force was used, *they must further establish that it was objectively unreasonable for the officer to believe that the force was lawful*—i.e., they must demonstrate that the right to be free from the particular use of force under the relevant circumstances was 'clearly established.'

*Abbott*, 705 F.3d at 725 (emphasis added). Accordingly, once the qualified immunity defense is raised, the plaintiff bears the burden of establishing objective unreasonableness to defeat it. *See, e.g.*, *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015).

After construing all facts in Gallion's favor, the Court finds that Defendants did not violate a clearly established right when Romeo delivered two side knee strikes to Gallion while Defendants were trying to bring Gallion to the ground and place him in custody. It is undisputed, at this juncture, that Gallion had already actively resisted by (1) not immediately pulling over when Defendants initiated the traffic stop,

(2) disregarding stop signs at four separate intersections until he struck a utility pole and was forced to come to a stop, (3) refusing to comply with Defendants' commands to "get out of the car" and "get on the ground," (4) tensing his body when Romeo removed him from the car, and (5) continuing to move while Romeo attempted to get him to the ground and place him in custody. Additionally, the level of force imposed by Defendants—that of two knee strikes—was not objectively unreasonable under the circumstances. In addition to resisting arrest, Gallion had just led Defendants on a dangerous chase violative of multiple traffic laws that threatened to harm Gallion, Defendants, and the public, and he possessed a visible semiautomatic weapon.

The Court's determination is in accord with Seventh Circuit case law, which makes clear that an officer does not violate a clearly established right when he uses a level of force similar to that used here (i.e., pushing, grabbing, or shoving, as opposed to, for example, a taser) on individuals similarly situated to Gallion. *See Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2013) (collecting cases holding that forceful grabbing and pushing is not excessive where complainant had violated the law, posed a physical threat, and resisted officer commands and arrest). On the other hand, the Seventh Circuit has held that it is unreasonable for officers to use force on passive subjects. *See Rambo v. Daley*, 68 F.3d 203, 207 (7th Cir. 1995) ("The Constitution clearly does not allow police officers to force a handcuffed, passive suspect [who did not attempt to flee or physically resist the officers] into a squad car by breaking his ribs."); *see also Payne*, 337 F.3d at 780 (collecting cases holding that forceful grabbing and pushing is excessive where there is no suspicion of wrongdoing, no physical threat, and no resistance).

The Court does not have the benefit of a response brief from Gallion, and his verified amended complaint does not allege that Gallion had ceased resisting at the time of the knee strikes, or that he intended to comply with Defendants' commands prior to the knee strikes. The undisputed facts before the Court, including the body-worn camera footage, indicate that Gallion was still moving and actively resisting arrest at the time that Romeo delivered the knee strikes. Even if he was not, under Seventh Circuit precedent, "[i]t's the totality of the circumstances, not the first forcible act, that determines objective reasonableness." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010). Even assuming that Gallion did not intend to resist or flee, he was neither compliant nor subdued, he led Defendants on a dangerous minute-and-a-half vehicle chase that violated myriad traffic laws, and he possessed a semiautomatic weapon in his vehicle. Indeed, in *Brooks v. City of Aurora, Illinois*, 653 F.3d 478, 487 (7th Cir. 2011), the Seventh Circuit held that:

> controlling law would not have communicated to a reasonable officer the illegality of applying pepper spray to an arrestee who has ceased active, physical resistance for a couple of seconds *but has not submitted to the officer's authority*, has not been taken into custody and still arguably could pose a threat of flight or further resistance.

(emphasis added). In light of the foregoing, the Court finds that it was not objectively unreasonable for Romeo to deliver two side knee strikes to Gallion while Defendants attempted to place him into custody. Therefore, qualified immunity shields Defendants from liability.

## 6. CONCLUSION

As explained in the body of this Order, Gallion neglected to respond to either Defendants' motion for summary judgment, ECF No. 29, or


Case 2:20-cv-00120-JPS Filed 11/15/22 Page 13 of 15 Document 34

Defendants' Civil Local Rule 7(h) motion for leave to file their statement of facts in support of summary judgment, ECF No. 27. Indeed, Defendants filed the latter after Gallion did not respond to multiple of Defendants' attempts to comply with the Court's meet-and-confer order, ECF No. 23, as to the factual submission(s) underlying summary judgment. Gallion has also not updated his address despite multiple instructions, ECF Nos. 14-1, 23, to do so.

Thus, under Seventh Circuit guidance, the Court analyzed Defendants' motion for summary judgment, in combination with Gallion's verified amended complaint, to determine whether the motion states adequate grounds for relief. Because the Court determines that there is no genuine dispute of material fact as to qualified immunity on Gallion's sole claim for use of excessive force in violation of the Fourth Amendment, and accordingly that Defendants' motion states adequate grounds for relief, the Court grants the motion and dismisses the action with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants Nicholas J. Romeo and Mark S. Dillman's Civil Local Rule 7(h) motion for leave to file their statement of facts in support of summary judgment, ECF No. 27, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants Nicholas J. Romeo and Mark S. Dillman's motion for summary judgment, ECF No. 29, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of November, 2022.

BY THE COURT:

______________________________________

J. P. Stadtmueller
U.S. District Judge